## Inhabitants of School District No. 1, in GREENE vs. JOSEPH BAILEY.

A school district, under the provisions of *stat.* of 1821, *ch.* 117, *sec.* 8, which au-. thorizes the raising of money for the purpose of erecting, repairing, purchasing, or removing a school-house, and of purchasing land upon which the same may stand, &c. may lawfully raise money to defray the expenses of litigation growing out of the exercise of these express powers.

If such district vote to raise money for purposes not within their authority, such vote would be a nullity ; and whoever should presume to carry it into effect, would do so at his peril. But *the district* would not be liable, the vote being altogether aside from its *corporate* powers.

Whether a school district has power to build a school-house, while having one suitable and convenient for their purposes, *quære.*

The *stat.* of 1826, *ch.* 337, *sec.* 1, in addition to an act for the assessment and collection of taxes, imposing certain liabilities upon towns and other corporations, and exempting assessors therefrom, does not apply to school districts.

ERROR, to reverse the judgment of the Court of Common Pleas, in an action brought by the present defendant against the plaintiffs in error, before a Justice of the Peace, and from thence carried to the Court of Common Pleas, by appeal. The original action was *assumpsit* for money had and received, and was founded upon a claim of said *Bailey,* to recover a portion of the amount of certain taxes that had been collected of him, assessed for the benefit of said district.

It appeared, that in 1828, there was an assessment of $154 on the inhabitants of the district, for the purpose of building a school-house ; and that the said *Bailey's* tax was $15,47, which he paid. In 1831, there was another assessment of $90,02, to pay the expenses of a suit pending between the district and said *Bailey.* His tax was $8,32, which was satisfied by a sale of property by the collector. In 1833, there was another assessment of $564,17, for the purpose of paying an execution which *Bailey* had recovered against the district, and to defray the expenses of the suit. *Bailey's* tax was $56,85, a portion of which, $40, was satisfied by a seizure and sale of property, and the balance was voluntarily paid by him.

On the introduction of the town records, it appeared that the certificate in regard to the town clerk, was, that he " was duly

sworn by the moderator;" but there was no certificate of the moderator. The sufficiency of this was objected to, as well as the admission of the clerk, who was called by the present plaintiffs to prove that he was sworn. But the objections were overruled, and the clerk testified that the oath was duly administered to him by the moderator.

At a district meeting, held *Nov.* 1831, it was voted to appropriate the tax of 1828, *viz.*: $154, to the building of a new school-house. And it was admitted that, at the time of passing this vote, an action was pending, brought by *Bailey* against the district, to recover for the building of a school-house, which was resisted by the district, on the ground that the house had not been built according to the contract; but in which defence the district failed, it appearing on trial that the house had been occupied by the district before the commencement of the suit.

The tax of $154 had been paid into the town treasury, and had been paid out upon the orders of the district committee, except $34,94, which had been paid to the committee. This last sum, it appeared, the inhabitants of the district agreed to divide among themselves in proportion to the tax. And the town treasurer testified that he offered to pay *Bailey* his proportion, but he refused to take it, saying, "let it lay in your hands."

No part of the $154, raised to build the school-house built by *Bailey*, was appropriated to that purpose, but was appropriated to build the school-house which was erected under the authority of the vote of 1831, excepting the $34,94, aforesaid.

The present plaintiffs offered to prove that there were still outstanding claims against the district, for the school-house built in 1831, but the evidence was rejected by the Court.

Upon this evidence the original defendants requested the Judge to direct a nonsuit, on the ground that this action could not lie against the district; such corporations, from their limited and peculiar character, not being liable to actions of this kind and under such circumstances. But the Judge ruled, and instructed the jury, that such action would lie, provided they should be satisfied that any unexpended money now remained in the hands of the town treasurer, for the use of the district, which had been raised by a tax upon the inhabitants of the district; in which case, the origi-

nal plaintiff was entitled to recover his share of it. He further instructed the jury, that the offer of the town treasurer to pay the plaintiff his proportion of such money, could not avail the defendants by way of defence to this action, as the money had not been brought into Court, as was necessary in cases of tender made by individuals.

The counsel for the defendants further requested the Judge to instruct the jury, that the action could not be maintained without proof of a demand prior to its commencement. But the Judge instructed the jury otherwise. Whereupon a verdict was returned for the original plaintiff for the sum of $3,60, being his proportion of the unexpended balance aforesaid.

To the foregoing rulings and directions of the Judge, the defendants tendered a bill of exceptions, and by writ of error brought the cause into this Court.

*Wells*, for the plaintiffs in error, insisted that the action could not be maintained, and cited *Mower* v. *Leicester*, 9 *Mass.* 247; *Stat. of* 1821, ch. 117, sec. 8; *Abbot* v. *Hermon*, 7 *Greenl.* 118; *Little* v. *Merrill*, 10 *Pick.* 543; *Stat. of* 1826, ch. 337, sec. 1.

He argued further, against the rulings and directions of the Judge, and to the point that there should have been a demand, cited *Varner* v. *Nobleborough*, 2 *Greenl.* 126; *Hosmer* v. *Clark*, 2 *Greenl.* 308; *Story on Bailments*, 82, sec. 107; *Joy* v. *The County of Oxford*, 3 *Greenl.* 131. That parol evidence of the clerk's being sworn was inadmissible, *Moor* v. *Newfield*, 4 *Greenl.* 44; *Abbot* v. *Hermon*, 7 *Greenl.* 118. As to the insufficiency of the record, *Colborn* v. *Ellis & al.*, 5 *Mass.* 427.

*A. Belcher*, for the defendant in error, contended that the district had no legal power to build the school-house of 1831, by a tax on the inhabitants, or to apply the money raised by the tax of 1828, for such purpose — a school-house having then just been built and accepted by the district; one every way suitable for the wants of the district. The committee were bound to appropriate the amount of tax of 1828, to the purposes for which it was assessed, and they could not apply it to any other purpose. *Stat. of* 1821, ch. 117, sec. 9.

The district has transcended its legal corporate powers, in the assessment of the tax of 1833, and the original plaintiff is consequently entitled to recover his proportion of that amount paid by him, viz. $15,47. *Bussey* v. *Gilmore,* 3 *Greenl.* 191.

1. At the meeting of 1833, the unexpended balance of the tax of 1828, viz.: $34,94, should have been deducted from the amount then to be raised ; which would have diminished the plaintiff's tax of that year $3,60. As they did not make the deduction, it may be considered as included by mistake, which would entitle the plaintiff to bring this action for his proportion. *Whitcomb & al.* v. *Williams & al.* 4 *Pick.* 228.

2. The plaintiff was entitled to recover the $3,60, by virtue of the agreement to divide. *Todd* v. *Clough,* 8 *Greenl.* 334.

3. The action was rightly brought against the district, instead of the officers of the town or district. *Stat.* 1821, *ch.* 117, *sec.* 10 ; *Stat.* 1826, *ch.* 337, *sec.* 1 ; *Amesbury W. Company* v. *Amesbury,* 17 *Mass.* 461.

4. The offer to pay, by the treasurer, did not amount to a tender, and was not regularly pursued. *Benson* v. *Carmel,* 8 *Greenl.* 110.

5. The commencement of the action was a sufficient demand. *Coffin* v. *Coffin,* 7 *Greenl.* 298 ; *Whitcomb & al.* v. *Williams & al.* 4 *Pick.* 228.

6. Parol evidence as to the town clerk's being duly sworn, was rightly admitted. At all events, substantial justice has been done, and the Court will not now disturb the verdict.

WESTON C. J. — School districts are *quasi* corporations, with very limited powers. By the statute of 1821, *ch.* 117, *sec.* 8, they are authorized to raise money, for the purpose of erecting, repairing, purchasing, or removing a school house, and of purchasing land, upon which the same may stand, and of utensils for such school-house. In the discharge of these powers, litigation may arise. They may become liable to an action ; and it may be necessary for them to bring one, to vindicate their rights. These rights and liabilities are incident to the powers conferred. And if suits arising in such cases should terminate unfavorably,

the district must necessarily suffer loss ; and they may construc-
tively possess the power to raise money to meet it.   In the exer-
cise of these powers and their incidents, at a regular meeting, the
corporation may become bound, and the minority of the district
subjected to the power of the majority.   But if the district
should undertake to transcend their powers, and should vote to
raise money for purposes not within their authority, such vote
would be a nullity ;  and whoever should presume to carry it into
effect, would do so at his peril.   But the district would not be
liable, the vote being altogether aside from their corporate powers.
So if they vote to raise a sum of money manifestly and clearly be-
yond what is wanted in the exercise of their powers, such vote is
either entirely void, or valid only for the amount required.   The
corporation can be bound only by a legal vote, or by an act done
in the discharge of their lawful authority.   To decide otherwise,
would be to put the property of the minority under the control
of the majority, beyond the purposes for which alone they are
clothed with corporate powers.

The district meeting may have undertaken to do more than
can be justified.   They had contracted with the original plaintiff
to build them a school-house.   He built one.   Whether it was
done in accordance with his contract, or whether if not, they had
accepted it, was in a course of litigation.   It was *ultimately de-
cided* against the district.   While that suit was still pending, it
appears that in *November*, 1831, it was voted by the district to
build another school-house, and to appropriate to this purpose the
money raised in 1828, to build the house in controversy.   The
district has power to raise money to build a school-house.   It
does not appear to have been contemplated, that one district
should have more than one school-house, and so long as they
have one, suitable and convenient for their purposes, it may be
questionable whether they have a right to build another.   By the
*9th section* of the act before cited, the money raised and assessed
in virtue of the *8th section*, after being collected and paid to the
treasurer of the town, is subject to the disposal of the committee
of the district, to be by them applied in conformity with the vote,
by which it was raised.   It appears that the greater part of the
money raised in 1828, was appropriated to build the school-house,

Inhabitants of School District No 1, in Greene *v.* Joseph Bailey.

voted in 1831. After the suit for the first house had terminated, and it turned out to be the property of the district, it became necessary to provide for the execution of the original plaintiff. Assuming that what was paid for the second school-house was not misapplied, and upon this point we give no opinion, there remained unexpended of the first sum raised, nearly thirty-five dollars ; and the sum necessary to meet the execution would only, it is insisted, be the balance remaining after deducting that amount. But a meeting of the district voted to raise the whole amount of the execution, without applying thereto the money previously raised. Suppose this to have been an unjustifiable course, how then would it stand ? A meeting of the district vote to raise money for an object not authorized by law, or more than is required for any lawful purpose. As far as such vote is unlawful, it is not a corporate act, nor are the corporation answerable for the consequences. Their powers are special and limited. When a majority of the inhabitants of a district undertake to go beyond them, as far as they exceed their authority, they cease to act as a corporation.

The counsel for the original plaintiff contends, that this action may be supported by the statute of 1826, in addition to an act for the assessment and collection of taxes, *ch.* 337, *sec.* 1. It is a sufficient answer to this argument, that the statute cited does not apply to school-districts, but to towns, plantations, parishes and religious societies. Upon them certain liabilities are imposed, from which the assessors, who act faithfully and with integrity, are exempted. It could never have been intended that a town should be held answerable for any improper proceedings, wilful or otherwise, on the part of the majority of a school district. In *Little* v. *Merrill et al.*, 10 *Pick.* 543, the Supreme Court of *Massachusetts* took the same view of the subject, when commenting on a similar statute.

It is urged that the original plaintiff ought to prevail against the district, because the money he claims has been improperly extorted from him, or received by mistake, and detained against equity and good conscience. But a school-district, acting as a corporation, can never be chargeable upon these grounds. They can confer no agency to extort money unlawfully, or to receive

or to retain it without right.   No vote of theirs, not authorized by law, could justify the demand or receipt of money in their behalf.   And if it was received by persons, assuming to be their agents, or under color of authority from them, in a case not within their corporate powers, no promise would be implied on the part of the corporation to refund it, nor would it form a consideration, which would sustain an express promise by them to this effect.

Upon this view of the case, and upon the facts set forth in the exceptions, we are of opinion, that the Judge, in the court below, should have directed a nonsuit, or instructed the jury, that the original plaintiff had not sustained his action.   We therefore reverse the judgment, but without costs; the error assigned and sustained being an error in law.

We have thus held, that the original plaintiff could not sustain an action against the district, upon the proof stated in the exceptions.   But we do not intend to intimate that others are liable upon the facts.   The assessors were doubtless justified in making the first assessment.   The second was to sustain the suit, in which the district were defendants.   In making the third, they found that judgment had been rendered against them, and an execution actually issued, for the amount they voted to raise.   The unexpended balance, a portion of which is claimed by the original plaintiff, has grown out of the peculiar *circumstances*, in which the parties have found themselves placed.   Further litigation in the affair, is certainly not to be encouraged.   The original plaintiff might have received the amount, claimed and recovered by him in the court below, but he chose to let it remain in the hands of the treasurer of the town ; and it is probably still ready for him on demand.

*Judgment reversed.*